```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

DOMINIC C. SPADA, JR.,        )
                              )
        Petitioner,           )
                              )
    v.                        )    Civil Action No. 04-12042- RCL
                              )
UNITED STATES OF AMERICA,     )
                              )
        Respondent.           )
```

## Introduction

Petitioner Dominic C. Spada, Jr. ("Spada") filed with this Court on September 23, 2004 a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Spada's Motion") attacking the 51-month sentence of imprisonment entered by the Court on September 24, 2003. Spada alleges that his sentence cannot stand because the determination that he was a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines was not based on "facts reflected in the jury verdict or admitted by the defendant" as required by Blakely v. Washington, _ U.S. ____, 124 S.Ct. 2531, 2537 (2004). As a result of his allegedly unconstitutional classification as a career offender, Spada asserts that his Guidelines sentencing range was improperly increased from 18-24 months to 51-63 months.

However, Spada's Motion must be denied because it suffers from four fatal flaws. In his written plea agreement with the government, in exchange for a very substantial reduction in the severity of the charges he was facing, Spada waived any right to

attack directly on appeal or collaterally through a *habeas* petition the 51-month sentence which Spada and the government jointly recommended to this Court. Even if Spada had not waived his right to challenge his sentence collaterally, the rule in <u>Blakely</u> does not apply to the federal Sentencing Guidelines and, even if it did, it does not apply retroactively to cases such as Spada's. Finally, even if the ruling in <u>Blakely</u> were applicable to the federal Guidelines and even if it did apply retroactively, it does not apply to sentencing enhancements, like the career offender provision, based on prior convictions.

## Statement of Facts

On June 28, 2000, a federal Indictment was returned against Spada and ten other defendants charging Spada and his co-defendants with conspiracy to possess with intent to distribute in excess of five kilograms of cocaine and on September 20, 2000, a First Superseding Indictment was returned against Spada and sixteen other defendants charging them all with engaging in such a conspiracy from in or about March, 1997 and continuing until on or about August 28, 2000, in violation of 21 U.S.C. §§ 841(a)(1) and 846. It was the government's contention, and Spada ultimately acknowledged at his change-of-plea hearing, that Spada had purchased quantities of cocaine for re-distribution from his co-defendant, Camilo Aguirre. <u>See</u> Spada's Pre-Sentence Report ("PSR") at paras. 32-36 (to which Spada asserted no objections).

Spada had approximately nine prior adult convictions dating as far back as 1987, including a 1991 conviction for assault and battery and a 1997 conviction for a domestic assault and battery. PSR at paras. 63-71. While Spada's criminal history yielded just two criminal history points, landing him in Criminal History Category II, under the Sentencing Guidelines, his two assault and battery convictions qualified him for sentencing as a career offender in Criminal History Category VI pursuant to U.S.S.G. § 4B1.1. PSR at paras. 72-73.

A jury trial for Spada and two other defendants was scheduled for May 27, 2003 before this Court. Had Spada proceeded to trial and been convicted of the charged drug conspiracy involving in excess of five kilograms, he would have faced a sentence of imprisonment for thirty years to life (Base Offense Level 37 and Criminal History Category VI). U.S.S.G. § 4B1.1(b)(A). Even had Spada been found responsible for just the 35 grams of cocaine referenced in his wiretapped conversations with his supplier and ultimately acknowledged by Spada himself (PSR at paras. 32-36 and 48), he would have faced a sentence of imprisonment for 210-262 months (Base Offense Level 37 and Criminal History Category VI) after a jury trial or 151-188 months after a timely guilty plea.

However, in May of 2003, in order to achieve a just sentence and to secure Spada's admission of guilt, the government offered and entered into with Spada a plea agreement which was highly

3

unusual and extremely favorable to Spada. The charged drug conspiracy in violation of 21 U.S.C. § 846 carried a maximum penalty of imprisonment ranging from twenty years' to life, depending on the quantity of cocaine attributable to Spada. The parties agreed that Spada would plead guilty to a Superseding Information charging Spada with conspiring **in violation of 18 U.S.C. § 371** to distribute cocaine and with using a communication facility to commit and facilitate his possession with intent to distribute cocaine in violation of 21 U.S.C. § 843(b). The Section 371 offense carried a maximum penalty of just five years' imprisonment and the Section 843 offense carried a maximum of just four years' imprisonment. Spada Plea Agreement at para. 2. Since Spada's sentence as a career offender would be driven by the maximum penalty applicable to his offense(s) of conviction, the reduction of the charges asserted against Spada dropped his Adjusted Offense Level all the way down to Level 15 and drastically dropped the applicable Sentencing Guidelines Range to 41-51 months. PSR at paras. 56-59.

The parties "agree[d] to take the position that [Spada] qualifie[d] for sentencing as a career offender pursuant to U.S.S.G. §4B1.1 and, therefore, that [his] Base Offense Level is 17." Plea Agreement at para. 3. The parties also agreed to recommend a sentence of 51 months. Plea Agreement at para. 4. Moreover,

4

> [i]n consideration of the concessions made by the U.S. Attorney in [Spada's] Plea Agreement, [Spada] knowingly and voluntarily waive[d] his right to appeal or collaterally challenge:
>
> . . .
>
> (2) The adoption by the District Court at sentencing of any of the positions found in paragraph 3 which will be advocated by the parties with regard to offense conduct, adjustments and/or criminal history under the U.S. Sentencing Guidelines; and
>
> (3) The imposition by the District Court of a sentence which does not exceed that [51-month sentence] being recommended by the parties, as set out in paragraph 4 and, even if the Court rejects one or more positions advocated by the U.S. Attorney or [Spada] with regard to the application of the U.S. Sentencing Guidelines.
>
> [Spada's] waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

Plea Agreement at para. 7.

On September 22, 2003, this Court sentenced Spada to serve a 51-month prison term on Count One of the Superseding Information and a concurrent 48-month prison term on Count Two of the Superseding Information. Spada did not appeal his sentence but now seeks to challenge it collaterally in the wake of the <u>Blakely</u> decision.

## Argument

Spada's Motion is fatally flawed in at least four respects and, therefore, must be dismissed. First, in his counseled plea agreement, Spada specifically and explicitly waived his right to attack collaterally the District Court's determination that the parties correctly viewed Spada as a career offender. Second, even if Spada's Motion were considered on its merits, Blakely does not apply to the federal Sentencing Guidelines. Thirdly, even if one were to assume *arguendo* that Blakely does apply to the Guidelines, Spada's Motion would have to be dismissed because Blakely does not appeal retroactively. Finally, even if Blakely were retroactively applicable to a sentence which had been imposed under the federal Sentencing Guidelines and which had become final prior to the decision in Blakely, Spada's Motion must fail because the Supreme Court in Blakely, as well as in the decisions on which Blakely is based, explicitly held that the ruling in Blakely does not apply to sentencing enhancements based on prior convictions.

1. **In his plea agreement, Spada waived his right to file precisely this type of collateral challenge to his sentence:**

Spada voluntarily, knowingly and intelligently waived in a counseled plea agreement[1] his right to challenge collaterally his

---

[1] On the signature page of his plea agreement, Spada also acknowledged that he had read the agreement in its entirety and had discussed it with his attorney. Spada's attorney, in turn, certified that Spada had read the agreement and that they had

6

designation by this Court as a career offender and the 51-month sentence he urged this Court to impose. As noted above, in paragraph 3 of his plea agreement, Spada acknowledged that he should be sentenced as a career offender on account of his prior assault and battery convictions. In paragraph 4 of that same agreement, Spada joined the government in recommending that this Court sentence him to the low end of the Guidelines Sentencing Range arrived at by treating Spada as a career offender. In paragraph 7 of that same agreement, and in consideration of the concessions made by the government which yielded a drastic reduction in his likely sentence, Spada specifically and explicitly waived any right to appeal or to challenge collaterally the imposition of the 51-month sentence he was seeking and any sentence based on his acknowledged status as a career offender.

It is now well settled that a defendant may waive constitutional rights as part of a plea agreement, United States v. Teeter, 257 F.3d 14, 22 (1st Cir. 2001), citing Town of Newton v. Rumery, 480 U.S. 386, 393 (1987) and Brady v. United States, 397 U.S. 742, 752-53 (1970), and several years ago the First Circuit joined the nine other circuits which had considered the issue in validating presentence waivers of appellate rights. Teeter, 257 F.3d at 23. In so doing, the First Circuit noted, in language

---

discussed its meaning and indicated his belief that Spada understood the agreement.

7

readily applicable to the instant case (except for the pronoun), that one of the benefits of such waivers "is the protection against bait-and-switch tactics on the part of a defendant who makes concessions to the government and then seeks to keep what she got and withdraw what she gave." 257 F.3d at 22 n. 4.

Spada's waiver extended not only to a direct appeal, but also to a collateral challenge like the instant motion. Nevertheless, his waiver meets all the tests for enforceability set by the First Circuit. In United States v. De-La-Cruz Castro, 299 F.3d 5, 10 (1st Cir. 2002), the Court of Appeals reiterated that a waiver of rights should be enforced if the written plea agreement "contains a clear statement elucidating the waiver and delineating its scope" (quoting Teeter)(internal quotations omitted) and if the District Court questioned the defendant specifically about his understanding of the waiver provision and adequately informed him of its ramifications. In the instant case, the pertinent waiver provisions are crystal clear, specifically referencing not only agreements embodied in previous paragraphs in the plea agreement, but explicitly spelling out that Spada would not be free after the fact to challenge his acknowledged status as a career offender or the joint sentence recommendation. Nor need the government remind this Court that it has routinely taken great pains to cover such waivers with defendants during their change-of-plea colloquies ever since such waivers became a fairly standard feature of plea

8

agreements in this District.[2]

Since Spada's Motion is precluded by Spada's own enforceable waiver of just such a collateral challenge, it must be dismissed.

2. **Blakely does not apply to the federal Sentencing Guidelines:**

Even if this Court were to consider the merits of Spada's Motion, his motion must be denied because it is premised on Blakely, a decision which is not applicable to the United States Sentencing Guidelines for the reasons set forth in United States v. Pineiro, 377 F.3d 464 (2004), petition for cert. pending, No. 04-5263 (filed July 14, 2004); United States v. Freddie J. Booker, 375 F.3d 508, 515-19 (7th Cir.)(Easterbrook, J., dissenting), cert. granted, --- S.Ct. ----, 2004 WL 1713654, 73 USLW 3073, 73 USLW 3074 (U.S. Aug 02, 2004) (No. 04-104); and United States v. Emmenegger, 2004 WL 1752599 (S.D.N.Y. Aug. 4, 2004) (Lynch, J.).

3. **Blakely does not apply retroactively to final judgments such as Spada's:**

Even if one were to assume *arguendo* that Blakely does apply to the federal Sentencing Guidelines, Spada's Motion must be dismissed because his conviction was final months before Blakely was decided

---

[2] The First Circuit in Teeter, 257 F.3d at 25-26, and in De-La-Cruz Castro, 299 F.3d at 10, also indicated that it might refuse to enforce otherwise proper waivers if enforcing them would work a miscarriage of justice. Not only would enforcement of Spada's carefully negotiated waiver not work an injustice, but, the government submits, to fail to enforce it would work a grave injustice by allowing Spada's "bait-and-switch" strategy to yield a still further reduction in his sentence than was contemplated by any of the parties.

9

and Blakely does not apply retroactively.

Under Teague v Lane, 489 U.S. 288, 310 (1989), "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." See also, Schiro v. Summerlin, __ U.S. __, 124 S.Ct. 2519, 2523 (2004) ("New rules of procedure, on the other hand, generally do not apply retroactively"). Under Teague, only "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of a criminal proceeding are given retroactive effect. 489 U.S. at 312. See also Summerlin, 124 S.Ct. at 2523; and Saffle v. Parks 494 U.S. 484, 495 (1990).

An analysis of the Supreme Court's recent decision in Summerlin demonstrates that Blakely qualifies as a new procedural rule that does not fall within the "watershed" exception. Therefore, Blakely is not retroactively applicable to cases on collateral review.

In Summerlin, the Court decided that the ruling of Ring v Arizona, 536 U.S. 584 (2002) does not apply retroactively. In Ring, the Court held that the ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000), required that aggravating factors necessary to impose the death penalty under Arizona law be proven to a jury rather than a judge. 536 U.S. at 609. Summerlin's conviction and death sentence had become final before Ring was decided. 124 S.Ct. 2521-22.

10

To decide whether Ring could be applied retroactively, the Court examined: (1) whether Ring articulated a procedural or substantive rule, and (2) if Ring involved a procedural rule, whether it fell within the "watershed" exception of Teague. The Supreme Court concluded that Ring articulated a procedural rule because Ring's holding did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, Ring merely altered "the range of permissible methods for determining whether a defendant's conduct is punishable by death." Id. at 2523.

Even if Blakely applies to the federal Sentencing Guidelines, it is a direct lineal descendant of the ruling in Apprendi, later applied to the death penalty context in Ring. Like the Ring decision, the Blakely decision does not alter the range of conduct or the class of persons subject to a specific sentence under the federal Sentencing Guidelines. Instead, Blakely merely changes the method of determining how the defendant's conduct is punished under the Guidelines by requiring any fact (other than a prior conviction) which enhances a sentence to be alleged in the indictment and either to be proven to a jury beyond a reasonable doubt or to be admitted by the defendant. 124 S.Ct. at 2536. Therefore, Blakely involved a procedural rule.

The Supreme Court also explained that the question of whether a new rule falls within the watershed exception depends on "whether

11

judicial factfinding so 'seriously diminishes' accuracy that there is an 'impermissibly large risk' of punishing conduct the law does not reach." 124 S.Ct. at 2525, quoting Teague at 311-312. The Court held that Ring did not announce a watershed rule because it could not confidently say that judicial factfinding seriously diminishes the accuracy of capital sentencing proceedings. Id.

Similarly, Blakely addressed the issue of whether factfinding must be conducted by a judge or jury. Because the Court in Summerlin could not say that judicial factfinding of aggravating circumstances seriously diminishes the likelihood of accurate death penalty proceedings, it follows that the judicial factfinding arguably prohibited by Blakely does not diminish the likelihood of accurate non-capital sentencing proceedings. Therefore, Blakely does not fall within the watershed exception because it does not establish a rule "without which the likelihood of an accurate conviction is seriously diminished."

Although the First Circuit has not yet examined whether Blakely can be applied retroactively, consistent with the reasoning of the Supreme Court in Summerlin, the First Circuit has held that Apprendi does not apply retroactively to cases on collateral review. Sepulveda v United States, 330 F.3d 55 (1st Cir. 2003). Every other court of appeals to consider the issue also has concluded that Apprendi does not apply retroactively. See, e.g., Coleman v United States, 329 F.3d 77 (2d Cir. 2003); United States

v. Sinton, 33 F.3d 481 (3d Cir. 2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002); Goode v. United States, 305 F.3d 378 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841 (7th Cir. 2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir. 2002); United States v Mora, 293 F.3d 1213 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001). Because Blakely involves the same procedural rule as Apprendi (whether a judge or jury can determine facts which enhance a sentence), it is highly likely that the First Circuit also would hold that Blakely does not apply retroactively, just as other courts that have addressed the issue have concluded that Blakely does not apply retroactively. See, e.g., Leonard v. United States, 2004 WL 2048682 (10th Cir., Sep. 8, 2004); United States v. Traeger, 325 F.Supp.3d 860 (N.D.Ill. 2004); United States v. Rodriguez, 2004 WL 2034850 (N.D.Ill., Sep. 2, 2004).

Accordingly, Blakely is not retroactively applicable to cases on collateral review and Spada's Motion must be dismissed since it is premised entirely on a retroactive application of Blakely to Spada's earlier and final conviction.

4. **Blakely does not apply to sentencing enhancements based on prior convictions:**

Assuming *arguendo* that the Blakely decision was applicable to the federal Sentencing Guidelines and that it was retroactively applicable to the thousands of judgments which had become final

13

before its issuance, Spada's Motion still would have to be dismissed because <u>Blakely</u> does not apply to sentencing enhancements based on prior convictions. Spada's Motion is premised on the notion that, under <u>Blakely</u>, this Court did not have the authority to determine that Spada was a career offender based on his two prior assault and battery convictions. However, the Supreme Court explicitly stated in both its <u>Blakely</u> and <u>Apprendi</u> decisions that its rulings in those cases did not apply to sentencing enhancements based on prior convictions.

Whether Spada is a career offender depends on whether "the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense."[3] U.S.S.G. § 4B1.1(3). However, the Supreme Court itself described <u>Blakely</u> as "requir[ing] us to apply the rule we expressed in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): '**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" 124 S.Ct. at 2536 (emphasis added). That is why other courts have

---

[3] According to U.S.S.G. §4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior convictions of either a crime of violence or a controlled substance offense." Because Spada's age and the nature of the instant offense are not in dispute, the applicability of §4B1.1 rests solely on the third requirement of the statute.

14

rejected out of hand challenges similar to that raised by Spada. See, e.g., United States v. Marseille, 377 F.3d 1249 (11th Cir. 2004) (government was not required to allege defendant's four prior convictions in its indictment or to prove them beyond a reasonable doubt for district court to use such convictions to enhance his sentence); and United States v Burton, 2004 WL 1813105, *10 (E.D. Pa) ("the allegations of prior convictions in this case need not be included in the indictment or admitted to by the defendant during the plea colloquy").

Spada may attempt to make a distinction between "prior convictions" and career offender status under U.S.S.G. § 4B1.1. However, logic dictates that career offender status be treated the same as prior convictions. Because career offender status depends on whether the defendant has prior convictions - and Blakely allows judges to determine the fact of prior convictions -- career offender status can be properly determined by the judge. The contrary approach -- requiring a jury to determine career offender status -- implies that a judge is precluded from determining either the nature of the instant offense (U.S.S.G. § 4b1.1(2)) or the defendant's age (U.S.S.G. § 4b1.1(1)). Yet, it is obvious that judges retain the power to determine career offender status in the wake of Blakely. As the court reasoned in United States v. McBride, 2004 WL 2203457, *2 (D.Kan., Sept. 28, 2004)

> Surely the judge can also, without violence to the Sixth Amendment, determine the "fact of

15

> the instant conviction," that is, whether the instant conviction is a crime of violence or controlled substance offense . . . .Even [the determination of the defendant's age] is arguably one subject to judicial determination, for a defendant's age is a relevant consideration in computing the defendant's criminal history.

In fact, to the government's knowledge, no court has held that it is precluded from determining career offender status. See, e.g., United States v. Byrd, 2004 WL 1618832, *2 (W.D.Tex. 2004) (sentencing court not precluded from making the finding that defendant was a career offender because Blakely does not apply to prior convictions); United States v. Mohr, 382 F.3d 857 (8th Cir. 2004) (Blakely did not prohibit district court from concluding that the defendant's prior burglary of a commercial building was a crime of violence for the purposes of the career offender provision); United States v. Sanders, 377 F.3d 845, 847 (8th Cir. 2004) (district court "did not engage in factfinding offensive to the United States Supreme Court's recent landmark decision in Blakely v. Washington" where the district court determined that burglary qualifies as a violent offense for the purpose of career offender status); United States v. McBride, supra; United States v. Rodriguez, 2004 WL 2034850 (N.D.Ill. 2004) ("a defendant's prior criminal history (the fact that triggered career offender status for [the defendant]) does *not* have to be submitted to a jury for determination"); United States v. Losoya-Mancias, 2004 WL 1903390 (D.N.D., Aug.25, 2004) (prior convictions could be considered by

16

sentencing court in imposing career offender enhancement without factual finding by jury); United States v. Paris, 2004 WL 1846128 (D.Kan., July 27, 2004) (court "believes" that it can still apply career offender provisions of U.S.S.G. § 4B1.1 but issues alternative sentences in the event that Blakely is interpreted to render the federal sentencing guidelines unconstitutional).

In conclusion, both logic and the weight of authority dictate that career offender status be treated the same as prior convictions. Because Blakely does not apply to prior convictions, Blakely does not apply to career offender status, and Spada's Motion must be dismissed.

## Conclusion

For all the foregoing reasons, the government respectfully submits that Dominic Spada's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 should be

dismissed.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                    By: _____
                                PATRICK M. HAMILTON
                                Assistant U.S. Attorney
                                U. S. Attorney's Office
                                John Joseph Moakley
                                United States Courthouse
                                1 Courthouse Way, Suite 9200
                                Boston, MA  02210
Date:    October 22, 2004        (617)748-3251

## CERTIFICATE OF SERVICE

    I, Patrick M. Hamilton, do hereby certify that a copy of the foregoing was served by first-class mail upon Petitioner Dominic C. Spada, Jr., #80271-038, P.O. Box 1000 - Camp, FCI Fort Dix, New Jersey 08640-0900.

Date:    October 22, 2004        _____
                                          Patrick M. Hamilton